CLARENCE MILLER et ux., Appellees, v. T. A. MERRITT et al., Appellants.

No. 46232.

APRIL 6, 1943.

George C. Lawrence, of Anamosa, and E. A. Fordyce, of Cedar Rapids, for appellants.

Remley & Remley, of Anamosa, for appellees.

MANTZ, J.—This is a suit in equity wherein plaintiffs ask for a dissolution of a copartnership farming agreement with defendants, the appointment of a receiver to take charge of the firm property to protect the interests of the parties, and for just and equitable relief, and for costs.

The pleadings and various motions are voluminous and cover

about sixty pages of the printed abstract and additions thereto. No useful purpose would be served by setting out more than a summary thereof. Enough will be set out to show the issues as passed upon by the lower court.

On September 11, 1940, the defendants, residents of Linn County, Iowa, and owners of a certain 360 acres of land in Jones County, Iowa, entered into a written agreement with plaintiffs for the purpose of farming and operating said land for a period of four years from and after March 1, 1941, with the right of either party to terminate said agreement under certain conditions. On March 1, 1942, after said written agreement had been terminated by the defendants, they took possession of said farm. The plaintiffs and defendants being unable to agree upon a settlement of various matters growing out of said farming operations, plaintiffs brought suit in equity to fix and determine the rights of the respective parties. Plaintiffs alleged that they and the defendants, under such written agreement, were a copartnership, or firm, while defendants denied such and asserted that the agreement was a lease and that the relationship between the parties thereunder was that of landlord and tenant. The defendants, residents of Linn County, Iowa, claiming that no partnership existed and that the action was a personal one, filed a motion to change the place of trial from Jones county to Linn county and supported said motion by an affidavit of one of the defendants. This motion was overruled and thereupon the defendants filed a motion to dismiss on the grounds that no partnership agreement existed and that none was intended. Following an adverse ruling on such motion the defendants filed a motion to transfer the cause from equity to law for further proceedings therein. This motion was overruled. Exceptions were taken to such adverse rulings. Defendants thereupon filed an answer with later amendments in which they denied any copartnership agreement, denied the interest of plaintiffs in the money on deposit in the Exchange Bank of Springville, Iowa, denied the right of plaintiffs to maintain the suit in equity in Jones county and pleaded that the action should have been brought in law and was triable in the county of Linn, the residence of the defendants, and that it was one between landlord and tenant. Defendants further pleaded

by way of amendment a counterclaim against plaintiffs growing out of the farming operations and set out therein the various items thereof. Said claim for damages included loss of hogs by reason of negligence and carelessness of plaintiffs, $340, failure to haul manure, $50, failure to repair or rebuild fences, $25, failure to harvest hay, $105, failure to harvest corn, $158.40, damage to hay rope, $17.09, for using shingles for kindling, $10, damage to oiler on gas engine, $2.04, loss of culvert on farm, $25, failure to replace door pulley, $1.30, and failure to plow 17.6 acres at the fair price of $26.40, making a total claim of damages for the various items of $760.23.

On July 13, 1942, defendants amended their cross-petition and set forth therein the different sums paid out by defendants for the purchase of livestock for the farm during the period the same was worked by the plaintiffs; also receipts from cattle, hogs, and hay sold during the same period. The defendants claimed that in such respects they had paid out $4,360.50 and that there had been receipts from sales of $6,665.14, leaving a profit of $2,304.64, and that such sum was to be shared equally by plaintiffs and defendants.

The plaintiffs, making reply to the various claims of defendants as set out in the answer, amendments thereto, and cross-petition, denied the same, or any liability thereunder, asked for an accounting and a disallowance of said claim of $760.23, and for general equitable relief.

Later, in an amendment to their answer, defendants alleged that if any partnership agreement had ever existed between the parties the same had been dissolved by mutual agreement of the parties thereto, and that a division of the net amounts due thereunder had been made and the part due plaintiffs in the amount of $1,065 had been tendered them, and that defendants were at all times willing to pay same to plaintiffs, but aver that plaintiffs refused to accept the same. Defendants further alleged that there no longer existed in the Exchange Bank of Springville, Iowa, any account in the name of Merritt Bros. & Miller and that said account had been closed by the defendants.

Plaintiffs, in reply to defendants' amendment, state that the partnership at all times prior to the action had deposited all firm funds in the Exchange Bank of Springville and allege that

defendants notified said bank not to allow plaintiffs to check on said account, and that later, and without permission of plaintiffs, defendants withdrew all of said funds from said bank and took and kept possession of them for the purpose of compelling and forcing plaintiffs to make settlement with the defendants on their unjust and unreasonable claim for damages.

Upon hearing the court found the equities were in favor of plaintiffs, holding that the plaintiffs and defendants were a copartnership located in Jones county, ordering its dissolution, and finding the interest of plaintiffs in the property of said partnership, and finding against defendants on their counterclaim. Defendants appeal.

When the cause was reached for trial on August 17, 1942, the parties in open court agreed that of the funds which grew out of the farming operations and which had been on deposit in the Exchange Bank of Springville, Iowa, in the name of Miller & Merritt Bros., the plaintiffs were entitled to the sum of $1,825.22, less any amount which the court might find owing defendants on their counterclaim against plaintiffs, together with interest adjustment, if any.

The first question to be determined is the nature and effect of the written agreement entered into by and between the parties on September 11, 1940, and under which the 360-acre farm was operated for the year beginning March 1, 1941. Appellees contend that it constituted a copartnership agreement and that there existed by reason thereof the firm of Miller & Merritt Bros. This claim is denied by the appellants, who claim that said instrument was a lease and that the status of the parties was that of landlord and tenant. If the contention of the appellees is correct, then the cause was properly brought in equity and Jones county was the proper forum. The written agreement was introduced in evidence, being Exhibit A.

The instrument signed by the parties contains about twenty-five sections and deals with the various phases of the contemplated farming operations. It describes the land, the tenure of the agreement, livestock, crops, management, sales and purchases, division of profits, etc. Under the heading ''Management'' it provides that the business is to be carried on under the

name of Miller· & Merritt Bros.; that all receipts and disbursements shall be made through Exchange Bank of Springville, Iowa; that both parties shall co-operate fully in the management of the farm. It speaks of "firm property" and "partnership property." It has in it at least thirty references to the "firm." Speaking of the firm, it provides that the "firm" shall purchase brood sows, milch cows, poultry, seed, feed, limestone, insurance, and will pay for machinery needed. It further provides for the appointment of a receiver. The terms "partnership" and "partnership property" are used in various places. · In one place it refers to the enterprise as a "joint adventure in the nature of a partnership" agreement. Under the heading "Division of Receipts and Expenses" it has a clause reading as follows: "All expenses incurred in connection with the property, owned by the firm, shall be borne by the respective members." It provides that all profits are to be shared equally. Springville, Iowa, is in Linn county.

The evidence offered shows that the operations of the farm were carried on pursuant to the terms of the written agreement. Livestock and feed were bought and brought upon the farm and charged against the parties to the agreement. Sales of property held or raised on the farm were made and the proceeds were deposited in the Exchange Bank of Springville, Iowa, in the name of Miller & Merritt Bros. Before the trouble started between the parties there was on deposit in said account the sum of approximately $6,665.14. On May 13, 1942, after the trouble started between the parties, the appellants withdrew all of such funds from said bank by means of two checks, one for $4,751.92 and the other for $1,913.22, both checks being made payable to Merritt Bros. and signed by Miller & Merritt Bros., by Frank Merritt. Both were endorsed to Merritt Bros., Frank Merritt, and were stamped PAID by the bank on June 23, 1942. Both checks were drawn without the knowledge or consent of the appellees.

This court, in the case of Malvern Nat. Bk. v. Halliday, 195 Iowa 734, 192 N. W. 843, had before it for consideration a written agreement similar in form to the one herein. It was there held that same had the salient features of an ordinary copartnership, viz., (1) a community of interest in profits and losses (2)

a community of interest in the capital employed (3) a community of power in administration. All of such features are present in the instrument existing in this case. In addition to the written instrument, the acts and conduct of the parties during the time it was in operation indicate that they viewed it in the same light—a copartnership undertaking. The trial court in the present case held that under the record a partnership relationship existed. We concur in this finding. 47 C. J. 718, section 119.

The court below was right in holding that a partnership resulted out of the written agreement and the farming operations and that the parties thereto were a firm operating the same. The partnership being operated in Jones county and the action being for its dissolution, it was proper to bring such action in that county. It was also proper to bring the action in equity for the dissolution and winding up of its affairs. The action having been properly brought in Jones county and in the proper court, the appellants' motions to dismiss and to transfer the place of trial to Linn county and to there try the same as a law action, were properly overruled. Ruthven v. Beckwith, 84 Iowa 715, 45 N. W. 1073, 51 N. W. 153.

The matter being tried in equity, the court, having jurisdiction of the subject matter and the parties, would have the right to dispose of all proper issues before it, and this would include the appellants' claim for damages as set out in their cross-petition. 21 C. J. 137, section 118; 30 C. J. S. 421, section 68; Smith v. Waterloo, C. F. & N. R. Co., 191 Iowa 668, 182 N. W. 890.

The determination of appellants' claim for damages raised purely fact questions. The court in its decree found adversely to the claims of appellants on all of their items of damages. As the cause is triable here de novo, we will examine the record and determine whether the trial court had before it sufficient evidence to sustain its findings. On such issue the appellants had the burden to establish their claimed items of damages. The total of the claim for damages which appellants make against the appellees is the amount of $760.23. The evidence shows that at the inception of the trouble the appellants did not claim any such sum by way of damages, but does show that as the negotia-

tions proceeded they increased their demands several times and finally wound up with a demand for $760.23. This was made up of various items as set forth in the pleading and all grew out of operation of the farm. We will mention the three largest of the items. The largest is for $340 for loss of hogs. Appellants claim that this loss was brought about by reason of the negligence of appellees in vaccinating the hogs. We find nothing in the record to substantiate this claim. The evidence shows that Miller was an experienced man in farming and in the handling of livestock and for years had vaccinated hogs without loss and that he had a license to do such work. The record shows that the hogs did not become sick until nearly two months following vaccination. An expert testified that the vaccination was performed properly, and gave as his opinion that there was a ''break'' and that this might have been brought about by faulty virus. The evidence shows that Miller used virus such as was generally used and that he purchased it upon the recommendation of the county agent. Regarding the claim of $105 for damages to hay and $158 for failure to properly husk the corn, we find that the evidence fails to establish such claim. In fact, the evidence shows that this work was done in a proper manner, all of such operations, of course, being subject to the hazards of weather. As to the other items of damage claimed we think the evidence fully supports the findings of the trial court. Some of the claims impress us as trivial, and some merely afterthoughts; some have little support in the evidence.

The trial court in summing up the evidence made particular mention of the impression it received from the acts, conduct, and testimony of the plaintiff, Clarence Miller, and in so doing used the following language:

''The court might say in passing that he was impressed, and favorably impressed with the testimony of the plaintiff, Clarence Miller; both as to the apparent knowledge concerning the things about which he testified, and also the way he testified, and his apparent fairness and candor on the witness stand * * *.''

We have gone over the testimony of the witness, as set forth in the abstract, and believe that the trial court had ample jus-

tification for the language quoted. In its decree the trial court made the following order:

"Therefore, it is hereby ordered, adjudged and decreed by the court that defendants failed to establish any part of their claim for damages and the same is dismissed; that personal judgment is hereby entered against Merritt Bros., T. A. Merritt and Frank Merritt, for the sum of $1825.22 with five per cent interest from March 2, 1942; that the partnership agreement and contract Exhibit A is terminated and the firm of Miller & Merritt Bros. is hereby dissolved."

We fully concur in the above finding of the trial court.

The appellants contend that the trial court was in error in allowing the full amount of $1,825.22 with five per cent interest from March 2, 1942, in that the court did not take into account a tender claimed to have been made by the appellants on May 12, 1942. It is claimed that on such date George C. Lawrence, attorney for appellants, offered to James E. Remley, attorney for appellees, a check for $1,065 signed by Merritt Bros. and payable to James E. Remley, and that the latter refused to accept it in payment of the amount which he claimed was due appellees. Appellants claim that such offer amounted to a tender. Attorney Lawrence, as a witness for appellants, testified that he made the offer to Attorney Remley two or three times and that the latter refused to accept. On cross-examination this witness stated that he knew at the time the check offered was for a less amount than was claimed as due by the appellees.

The court found that there was due appellees on March 2, 1942, the sum of $1,825.22. The offer of appellants to pay appellees the sum of $1,065 on May 12, 1942, would not amount to a tender, being a lesser sum than the amount claimed by appellees and also found to be due by the court. Appellants knew that appellees were claiming a larger amount than $1,065, while they were insisting that $1,065 was all that was due appellees and offered the check in full settlement.

We have held on a number of occasions that a tender, to be good, must be unconditional. Schwab v. Roberts, 220 Iowa 958, 263 N. W. 19, and cases cited; Simons v. Petersberger, 171 Iowa 564, 151 N. W. 392. The check for $1,065 offered to the attorney

238

for appellees was not unconditional. Appellants insisted that it was to pay appellees all that they had owing them. Such did not constitute a valid tender. See, also, Guengerich v. Smith, 36 Iowa 587; McWhirter v. Crawford, 104 Iowa 550, 72 N. W. 505, 73 N. W. 1021.

The trial court held that there was due appellees on March 2, 1942, the sum of $1,825.22 from the partnership funds, and entered judgment against appellants for such sum with five per cent interest from March 2, 1942, and further ordered the termination and dissolution of the partnership relationship and taxed the costs to the appellants.

We find the record fully sustains the holding of the trial court and the same is affirmed.—Affirmed.

All JUSTICES concur.